UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

CARMAN Y. WILLIAMS,

                              Plaintiff,          08 Civ. 3858

        -against-                                 OPINION

FLORENTINO HERNANDEZ, Chair, Official
Capacity, NEW YORK CITY HOUSING
AUTHORITY, DEAN ROBINSON, GLORIA
BUSH, NEW YORK CITY HOUSING
AUTHORITY, Its agents, employees,
successors, assigns and all others in
active concert with them,

                              Defendants.

----------------------------------------X

A P P E A R A N C E S:

        Pro Se

        CARMAN Y. WILLIAMS
        344 East 28th Street, #8G
        New York, NY  10016


        Attorneys for Defendants

        SONYA M. KALOYANIDES, ESQ.
        New York City Housing Authority
        250 Broadway, 9th Floor
        New York, NY  10007

**Sweet, D.J.**

Defendants Tino Hernandez (incorrectly identified in the Complaint as "Florentino" Hernandez ("Hernandez" or "the Defendant") and the New York City Housing Authority ("NYCHA" or the "Defendant Authority," collectively, the "Defendants") have moved under Rules 4(m) and 12(c), F. R. Civ. P., to dismiss the complaint of plaintiff Carman Y. Williams, pro se ("Williams" or the "Plaintiff"). On the conclusions set forth below, the motion is granted.

## I. BACKGROUND

### The Parties

Williams has been the tenant of record of an apartment located in Nathan Straus Houses ("Straus Houses"), a NYCHA development located at 344 East 28th Street, since on or about May 8, 1990. Defendant NYCHA is a public housing authority. Defendants Robinson and Bush are employees of NYCHA and are assigned to Strauss Houses as the Housing Manager and Housing Assistant, respectively.

### Prior Proceedings

1

On October 20, 2007, Williams filed her complaint
against the Defendants in the Pro Se Office.  Plaintiff
alleges five causes of action: (1) violation of 42 U.S.C. §
1983 arising out of the denial of her requests for a
grievance hearing; (2) violation of 42 U.S.C. §
1437a(a)(3)(B) arising out of the denial of her request for
a hardship exemption; (3) retaliation and racial
discrimination in violation of 42 U.S.C. § 3604, et. seq.,
arising out of eviction proceedings initiated by the NYCHA;
(4) violation of 24 C.F.R. § 966, et. seq., arising out of
the denial of her requests for a grievance hearing; and (5)
negligent hiring and supervision of employees by the NYCHA.

By Order dated April 24, 2008, Williams' request
for injunctive relief following her receipt of a notice
from NYCHA that the continuation of her tenancy was under
review was denied.

NYCHA and Hernandez were served with the Summons
and Complaint on August 18, 2008.  NYCHA and Hernandez
answered the Complaint on September 17, 2008.

The instant motion was marked fully submitted on
March 9, 2009.

## II. THE FACTS

In accordance with its state-authorized and
federally-mandated powers, the Housing Authority takes
administrative action pursuant to its Termination of
Tenancy Procedures ("Termination Procedures") to terminate
the tenancy of tenants who are, inter alia, chronically
delinquent in the payment of rent. See Exh. E to the
Declaration of Mindy Merdinger Blackstock in Support of
Defendants' Motion to Dismiss the Complaint ("Blackstock
Decl."). Before termination of tenancy charges are brought
against any NYCHA tenant, the tenant is given an
opportunity to discuss the problem with the manager of the
development. Id. ¶ 2. If the tenant will not meet with
the manager, and/or if, following such a meeting, the
manager believes that termination of tenancy is the
appropriate course of action, the case is referred to the
Tenancy Administrator who reviews the file and, if
appropriate, prepares administrative charges. Id. ¶ 3. If
tenancy termination charges are brought, the tenant is
entitled to a hearing, on specific written charges, before

3

an impartial hearing officer. Id. ¶ 4, 5. The tenant is apprised of her right to appear with an attorney, or other representative, to confront and cross-examine witnesses against her, and to present her own witnesses. Id. ¶ 6. The Hearing Officer must issue a written decision regarding whether the charges are found to be proven and, if so, the penalty to be imposed. Id. ¶ 9. The decision of the Hearing Officer is then reviewed by NYCHA's Board to determine if the Hearing Officer's decision is contrary to any applicable laws or regulations. Id. ¶ 11. If NYCHA concludes that the tenancy should be terminated, it must then serve the tenant with a notice to vacate, commence an action in Housing Court, and obtain a judgment of possession and a warrant of eviction against the tenant before any eviction action may commence. Id. ¶ 25. Meanwhile, a tenant may obtain judicial review of NYCHA's determination to terminate her tenancy through an Article 78 proceeding. Id. ¶ 12.

By letter dated October 3, 2007, Williams was advised by Defendants that her lease was being considered for termination for Chronic Rent Delinquency ("CRD") and an appointment was made for Williams to discuss the matter with management on October 9, 2007. Blackstock Decl. Exh.

4

F. On October 9, 2007, Robinson sent Williams a follow-up letter advising her that she was being granted another opportunity to meet with the management office on October 12, 2007 to discuss her CRD charges before her tenant folder would be forwarded to the Central Office for review. Id. On October 12, 2007, Robinson sent a third letter setting an October 16, 2007, or in the alternative, October 18, 2007 meeting date to discuss Williams' CRD. Id. According to the letters, Williams did not attend any of the meetings, and by letter dated October 18, 2007, Robinson advised Williams that her folder was being forwarded to NYCHA's Tenancy Administrator for review. Id. NYCHA served formal charges of Chronic Rent Delinquency on Williams on October 16, 2007. Id. Exh. G. The hearing on those charges commenced on September 19, 2008 before an impartial hearing officer, was continued on October 8, 2008, and December 10, 2008, and was scheduled to resume on January 22, 2009. Blackstock Decl. ¶ 17.

In addition to the CRD action, the NYCHA commenced a non-payment proceeding in Housing Court resulting from Williams' alleged failure to pay nearly a year of back rent. See Blackstock Decl. ¶ 19, Exh. H & I. Williams unsuccessfully moved to dismiss the action and, on

5

appeal to the Appellate Term, First Department,

unsuccessfully moved for a stay of the Housing Court non-

payment proceeding until resolution of her appeal. Id.

Exh. I. On December 17, 2008, the non-payment proceeding

was adjourned to January 28, 2009. Blackstock Decl. ¶ 19.

**III. DISCUSSION**

## A. **Plaintiff's First, Second, and Fourth Claims**

### 1. **Legal Standards**

On a motion to dismiss pursuant to Rule 12, all

factual allegations are accepted as true, and all

inferences are drawn in favor of the pleader. Mills v.

Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).

The issue "is not whether a plaintiff will ultimately

prevail but whether the claimant is entitled to offer

evidence to support the claims." Villager Pond, Inc. v.

Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting

Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).

However, while the pleading standard set forth in

Rule 8 of the F. R. Civ. P. is a liberal one,

6

the pleading standard Rule 8 announces . . .
demands more than an unadorned, the-defendant-
unlawfully-harmed-me accusation.  A pleading that
offers labels and conclusion or a formulaic
recitation of the elements of a cause of action
will not do.  Nor does a complaint suffice if it
tenders naked assertions devoid of further
factual enhancement.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal

cites and quotes omitted).  Thus, a complaint must allege

sufficient factual matter to "state a claim to relief that

is plausible on its face."  Id. (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In meeting

this "plausibility standard," the plaintiff must

demonstrate more than a "sheer possibility" of unlawful

action; pleading facts that are "'merely consistent with' a

defendant's liability . . . 'stops short of the line

between possibility and plausibility of entitlement to

relief.'"  Id. (quoting Twombly, 550 U.S. at 557); see also

Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 131

(2d Cir. 2007) ("Although the pleading standard is a

liberal one, bald assertions and conclusions of law will

not suffice.  To survive dismissal, the plaintiff must

provide the grounds upon which his claim rests through

factual allegations sufficient to raise a right to relief

above the speculative level." (internal quotes and cites

omitted)); Gavish v. Revlon, Inc., No. 00 Civ. 7291 (SHS),
2004 WL 2210269, at *10 (S.D.N.Y. Sept. 30, 2004) ("[B]ald
contentions, unsupported characterizations, and legal
conclusions are not well-pleaded allegations and will not
defeat a motion to dismiss.").

Although the allegations of a pro se complaint
are reviewed under less stringent standards than pleadings
drafted by counsel, the "duty to liberally construe
plaintiff's complaint is not the equivalent of a duty to
re-write it." Joyner v. Greiner, 195 F. Supp. 2d 500, 503
(S.D.N.Y. 2002) (dismissing pro se plaintiff's complaint
for failing to allege facts to support a necessary element
of his claim). Moreover, this is "not a case involving an
uneducated, naïve plaintiff who may have inartistically
stated a valid cause of action." Raitport v. Chemical
Bank, 74 F.R.D. 128, 135 (S.D.N.Y. 1977). Williams is a
graduate of the Benjamin N. Cardozo School of Law and
passed the New York State bar examination. She has
appeared pro se in seven prior proceedings against NYCHA,
its employees, and her fellow tenants of Straus Houses,
which include: several adversary proceedings in Bankruptcy
Court; a sexual harassment lawsuit in federal court; a
state court defamation action against the NYCHA attorney in

the sexual harassment lawsuit and another attorney for

responding to a document request from the Appellate

Division's Character and Fitness Committee in connection

with Williams' application to the bar; a defamation action

in state court against several of her neighbors at Straus

Houses; a discrimination complaint before the New York

State Division of Human Rights; and a 2005 federal action

based upon NYCHA's consideration of potential termination

of tenancy charges against Williams.  See Blackstock Decl.

¶¶ 26-44.  As the Raitport court noted for a comparably

educated pro se litigant:

> He comes before this Court wearing the cloak of a
> pro se applicant, and seeks to extract from us
> the solicitude ordinarily afforded one appearing
> without counsel.  But this should not shield him
> from rebuke when merited.  He is an intelligent,
> able and sophisticated litigant . . . .  [W]e are
> not to be manipulated by resourceful but
> meritless moves . . . which serve only to
> distract us from important judicial business.

Id. at 133 (quoting Ackert v. Bryan, Docket No. 27240

(2d Cir. June 21, 1963)).


        Finally, the courts will not "excuse frivolous or

vexatious filings by pro se litigants," Iwachiw v. State

Dep't of Motor Vehicles, 396 F.3d 525, 529 n.1 (2d Cir.

2005), and pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

## 2. The First, Second, and Fourth Claims Do Not Allege Sufficient Facts to State a Claim Upon Which Relief May Be Granted.

Williams' first and fourth claims, alleging violations of 42 U.S.C. § 1437d(k) and 24 C.F.R. § 966, respectively, arise from Defendants' refusal to grant Williams' request for a grievance hearing.[1] Williams' second claim alleges violations of 42 U.S.C. § 1437a(a)(3)(B) arising from the NYCHA's denial of Williams' request for a hardship exemption.

---

[1] NYCHA, as a public housing authority, is subject to Housing and Urban Development ("HUD") regulations, which "set forth the requirements, standards and criteria for a grievance procedure to be established and implemented by public housing authorities (PHAs) to assure that a PHA tenant is afforded an opportunity for a hearing if the tenant disputes . . . any PHA action or failure to act involving the tenant's lease with the PHA or PHA regulations . . . ." 24 C.F.R. § 966.50. Pursuant to these regulations, NYCHA maintains a Grievance Policy governing individual grievances between the tenant and NYCHA. See Blackstock Decl. Exh. B. Under NYCHA's policy a tenant may invoke the grievance procedure if the grievance is eligible for processing, the tenant meets deadlines for filing a grievance and the tenant is current in her rent paying obligations. Id.

10

The relevant factual allegations set forth in

Plaintiff's claims are minimal.  The first claim alleges,

in relevant part:

> 5.    Plaintiff has made numerous requests for
>       grievances that have been ignored by the
>       Defendant management employees.
>
> 6.    Plaintiff is entitled under the Housing Act to
>       make grievances arising out of her tenancy and
>       to have grievance hearings scheduled when
>       dissatisfied with the results of any such
>       informal efforts to resolve any grievances.

Complaint ¶ 5, 6.   The second claim alleges, in relevant

part:

> 9.    Plaintiff applied for a hardship exemption in or
>       about October 2007.
>
> 10.   The Defendant Dean Robinson, without complying
>       with the statute denied plaintiff's request one
>       day after it had been made.

Complaint ¶ 9, 10.  The fourth claim incorporates the

allegations contained in the prior claims and further

alleges:

> 21.   Defendants have refused to adhere to its own
>       policies and have repeatedly denied to the
>       Plaintiff on at least three (3) occasions the
>       right to have a grievance hearing in connection

11

> with proposed actions - adverse and detrimental
> to the Plaintiff and her family – and thus
> Plaintiff's rights have been violated as a direct
> and proximate cause.

Complaint ¶ 21.

Taking as true that Plaintiff was denied a
grievance hearing on several occasions, nothing pled in the
Complaint, aside from Plaintiff's assertions that
Defendants acted unlawfully, suggests that such denials
were improper. Similarly, the fact that Plaintiff's
request for a hardship exemption was denied "one day after
it had been made" fails to establish more than the "sheer
possibility" of unlawful action by Defendants. See Iqbal,
129 S.Ct. at 1949. That Plaintiff's factual allegations
are "consistent with" her claims against Defendants does
not render her factual allegations sufficient to satisfy
the "plausibility standard" set forth in Iqbal and Twombly.
Id.; Twombly, 550 U.S. at 557. Because Plaintiff's first,
second, and fourth claims contain "no more than [legal]
conclusions" unsupported by factual allegations, they are
dismissed for failure to state a claim upon which relief
may be granted.[2]

---

[2] Defendants also argue that no private right of action exists under 42
U.S.C. § 1983 to enforce the provisions of 42 U.S.C. § 1437a(a)(3)(B),
42 U.S.C. § 1437d, or 24 C.F.R. § 966. Because Plaintiff's claims fail

12

## B.   **Plaintiff's Third Claim for Race Discrimination and Retaliation Is Not Ripe for Review**

Plaintiff's third claim alleges violation of 42

U.S.C. § 3601, et seq., arising from Defendant's alleged

racial discrimination and attempts at retaliation as a

result of Plaintiff's prior lawsuit against the NYCHA.   The

claim alleges, in relevant part:

16.   Based on Plaintiff's past allegations of
      violations and a recent complaint the defendants
      each and all have engaged in retaliatory acts
      against the Plaintiff in the form of threats of
      eviction and other harassment beginning
      subsequent to the disposition of a previous suit
      against the Authority in [. . .] Similarly
      situated white and non-black tenants have not
      been subjected to similar onerous terms and
      conditions of tenancy, and in fact have been
      subjected to more favorable terms and
      conditions.

Complaint ¶ 16.   Defendants seek dismissal of Williams'

third claim for discrimination and retaliation on the

grounds that Williams' claims is merely speculative and

based on "contingent future events may not occur as

anticipated, or indeed may not occur at all."   Thomas v.

_____

to allege sufficient facts to state a viable claim, it is unnecessary
to address this argument at this time.   As a general matter, however,
the Supreme Court has expressed a reluctance to find an implied right
of action where none was explicitly granted by Congress.   Gonzaga Univ.
v. Doe, 536 U.S. 273, 280 (2002).

Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81
(1985). Defendants argue that because the claim is not
ripe, this Court lacks subject matter jurisdiction to
consider the claim.

When considering a motion to dismiss based on
lack of subject jurisdiction, the Court must accept as true
all material factual allegations in the complaint.
Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d
Cir. 1998) (citing Scheuer, 416 U.S. at 236). However, a
"plaintiff asserting subject matter jurisdiction has the
burden of proving by a preponderance of the evidence that
it exists." Makarova v. United States, 201 F.3d 110, 113
(2d Cir. 2000). "[W]hen the question to be considered is
one involving the jurisdiction of a federal court,
jurisdiction must be shown affirmatively, and that showing
is not made by drawing from the pleadings inference
favorable to the party asserting it." Drakos, 140 F.3d at
131 (citing Norton v. Larney, 266 U.S. 511, 515 (1925)).
In addition to materials contained in the pleadings, the
Court may also "resolve disputed jurisdictional fact issues
by reference to evidence outside the pleadings, such as
affidavits." Filetech S.A. v. France Telecom S.A., 157
F.3d 922, 932 (2d Cir. 1998) (citing Antares Aircraft, L.P.

14

v. Fed. Republic of Nigeria, 948 F.2d 90, 96 (2d Cir.
1991), vacated on other grounds, 505 U.S. 1215 (1992)); see
also J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107,
110 (2d Cir. 2004), cert. denied, 544 U.S. 968 (2005).
However, conclusory or hearsay statements contained in the
affidavits may not be relied upon.   Attica Cent. Sch., 386
F.3d at 110.


　　　　Ripeness is a "constitutional prerequisite" to
the exercise of jurisdiction by federal courts.
Nutritional Health Alliance v. Shalala, 144 F.3d 220, 225
(2d Cir. 1998).   The ripeness doctrine prevents the courts
from "premature adjudication" over "abstract
disagreements," and protects the government from "judicial
interference until a . . . decision has been formalized and
its effects felt in a concrete way by the challenging
parties."   Abbott Labs. v. Gardner, 387 U.S. 136, 148-49
1967), overruled on other grounds, Califano v. Sanders, 387
U.S. 136, 148-49 (1967).   When "there are nebulous future
events so contingent in nature that there is no certainty
they will ever occur," the case is not ripe for
adjudication.   In re Drexel Burnham Lambert Group Inc., 995
F.2d 1138, 1146 (2d Cir. 1993).

"In order to determine whether an issue is ripe
for adjudication, a court must make a fact-specific
evaluation of 'both the fitness of the issues for judicial
decision and the hardship to the parties of withholding
court consideration.'" United States v. Fell, 360 F.3d
135, 139 (2d Cir. 2004). The "fitness of the issues" prong
of this inquiry "requires a weighing of the sensitivity of
the issues presented and whether there exists a need for
further factual development." Murphy v. New Milford Zoning
Comm'n, 402 F.3d 342, 347 (2d Cir. 2005) (citing Thomas v.
Union Carbide Agric. Prods. Co., 473 U.S. 568, 581 (1985)).
"Meanwhile, the 'hardship to the parties' prong clearly
injects prudential consideration into the mix, requiring
[the court] to gauge the risk and severity of injury to a
party that will result if the exercise of jurisdiction is
declined." Id. (citing Abbott Labs., 387 U.S. at 149).

In Williams v. Hernandez, No. 05 Civ. 2420 (PKC),
2006 WL 156411 (S.D.N.Y. Jan. 18, 2006), the Honorable P.
Kevin Castel had occasion to consider the ripeness of
similar claims brought by Plaintiff. There, Plaintiff
alleged that the NYCHA had retaliated against her and
subjected her to racial discrimination by initiating
termination of tenancy proceedings in response to

16

complaints of harassment from Plaintiff's neighbors. Id. at *2. At the time her complaint was filed, Williams had met with Robinson and was informed that her tenant file was being forwarded to another NYCHA office for review. No other action was alleged by Williams. Id.

In considering Plaintiff's claim, Judge Castel first noted that the ripeness of Plaintiff's claim did not "turn on the precise moment when eviction proceedings should be deemed to have begun." Williams, 2006 WL 156411, at *4. Instead, "the relevant inquiry . . . is whether the proceedings have progressed to a sufficiently late stage . . . ." Id. (citing Murphy, 402 F.3d at 347). Observing that "[n]ot every meeting or communication involving a state actor and an individual may give rise to a justiciable case or controversy," Williams, 2006 WL 156411, at *4, Judge Castel cited the "extensive set of procedures" that NYCHA would have to follow before Plaintiff's eviction could occur. Id. at *5. Because "Plaintiff's claims in [the] case might not ever ripen into an actual controversy," no prejudice would result from the court's

17

refusal to adjudicate her claims at that time.[3] Williams, 2006 WL 156411, at *4-*5.

At the time the instant action was initiated, the eviction proceedings before the Hearing Officer had not yet been completed, and any ruling adverse to the Plaintiff remained subject to review by the NYCHA Board. Actual eviction would further require the NYCHA to obtain a warrant of eviction in Housing Court, during which time Plaintiff could obtain judicial review of the NYCHA's determination through an Article 78 proceeding in the New York courts.[4] While the eviction proceedings here have progressed further than the proceedings in Williams, they have yet to reach the point where Plaintiff faces an actual threat of eviction. Where, as here, a tenant has suffered no actual harm, courts have consistently found that there has been no adverse action sufficient to maintain a claim. See Katz v. Klehammer, 902 F.2d 204, 207 (2d Cir. 1990) (affirming Rule 12(b)(6) dismissal because mere threat of

---

[3] Judge Castel further noted the potential hardship to the NYCHA if the court intervened prior to any meaningful action against the Plaintiff. Williams, 2006 WL 156411, at *5.

[4] Plaintiff has filed a motion to strike Defendants' Reply and accompanying affidavits as improperly raising, for the first time, the argument that Plaitiff's third claim is now moot. See infra III.D. Because dismissal of Plaintiff's third claim is appropriate under the ripeness doctrine, consideration of the Defendants' mootness argument is unnecessary.

eviction, rather than actual eviction, was insufficient to support plaintiff's retaliation claim); Adler v. Kent Vill. Hous. Co., Inc., 123 F. Supp. 2d 91, 93-94 (E.D.N.Y. 2000) (finding plaintiff's due process claims unripe in light of possibility of plaintiff's success in parallel administrative review process); Congdon v. Strine, 854 F. Supp. 355, 364 (E.D. Pa. 1994) (holding notices of eviction sent after plaintiff filed complaints with various government agencies did not by themselves constitute retaliation under FHA because "for such action to constitute a legal foul, there must be actual harm," and plaintiff was never evicted).

Plaintiff's third claim is dismissed as unripe.

## C.   The Tort Claim Is Dismissed

Under New York Public Housing Law ("PHL") § 157, which incorporates General Municipal Law ("GML") § 50-e and § 50-h by reference, an individual must serve a Notice of Claim on NYCHA within one year and ninety days after the cause of action accrued before a personal injury action can be commenced. Compliance with this service requirement must also be alleged in the initial pleading. N.Y. Pub.

Hous. Law § 157(2) (McKinney 2009); see also Oshinsky v. New York City Hous. Auth., No. 98 Civ. 5467 (AGS), 2000 WL 218395, at *14 n.5 (S.D.N.Y. Feb. 23, 2000). The purpose of PHL § 157 and GML § 50-e and § 50-h are to provide municipal entities with an opportunity to timely investigate the allegations, speak with witnesses while recollections are still fresh, and where warranted, resolve claims prior to the commencement of any litigation. Failure to meet these conditions precedent are fatal to any tort claim as a matter of law. See id. (finding failure to show notice of claim was filed permitted dismissal for failure to state a cause of action) (citing Brown v. Metro. Transit Auth., 717 F. Supp. 257, 259 (S.D.N.Y. 1989)).

Williams' complaint fails to allege compliance with the Notice of Claim requirement as required by PHL § 157 and GML § 50-e in connection with her allegations that NYCHA negligently hired, supervised, and retained Robinson and Bush. Consequently, the tort claim alleged in the Complaint is dismissed as a matter of law for failure to meet a condition precedent.[5]

---

[5] Plaintiff's tort claim must also be dismissed because she failed to allege that "at least thirty days have elapsed since the demand, claim or claims upon which such action . . . is founded were presented to the authority for adjustment" and that the NYCHA has not, in fact, adjusted the claim. N.Y. Pub. Hous. Law § 157(1).

## D.    Plaintiff's Motion to Strike Is Dismissed As Moot

In their Reply Brief, Defendants argue that
Plaintiff's third claim is moot in light of the fact that
the administrative proceedings against Williams have been
discontinued during the briefing of the instant motion.  In
response, Plaintiff has filed a motion to strike
Defendants' Reply Brief, including the accompanying
affidavits, for improperly raising the mootness argument
for the first time on reply.  Because the dismissal of
Plaintiff's third claim does not rely on consideration of
the mootness argument presented in Defendants' Reply,
Plaintiff's motion to strike is dismissed as moot.

## IV.  CONCLUSION

On the facts and conclusions set forth above, the
motion by the Defendants is granted and the Complaint is
dismissed without prejudice.

It is so ordered.

21

New York, NY
July 2√ , 2009

ROBERT W. SWEET
U.S.D.J.